**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: 7:24-cr-00780-DCC-1 |
| | ) | |
| v. | ) | |
| | ) | **MOTION FOR JUDGMENT OF** |
| JOSEPH F. WALLACE | ) | **AQUITTAL OR NEW TRIAL** |
| | ) | |

Pursuant to Rules 29(c), 33(a), and 33(b)(2) of the Federal Rules of Criminal Procedure, Joseph F. Wallace moves the Court for a judgment of acquittal or alternatively for a new trial on grounds that the evidence is insufficient to sustain the verdict or, alternatively, the interest of justice requires a new trial.

This case was tried before a jury on July 7-13, 2026. *See* ECF Nos. 215, 231. At the close of the Government's case, Mr. Wallace made an oral Rule 29 motion. ECF No. 222. That motion was denied, and the jury returned a guilty verdict against Mr. Wallace on July 13, 2026. ECF Nos. 222, 230.

The Third Superseding Indictment charged Mr. Wallace with multiple counts of two offenses. *See* ECF 157. First, the indictment charged Mr. Wallace with wire fraud in violation of 18 U.S.C. § 1343. For the jury to find Mr. Wallace guilty of wire fraud, the government had to prove each of the following elements beyond a reasonable doubt:

> First, that the defendant devised or intended to devise a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises that were material; and

> Second, that, for the purpose of executing the scheme, the defendant transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds.

ECF No. 227 at 12–13.

1

The indictment also charged Mr. Wallace with access device fraud in violation of 18 U.S.C. § 1029(a)(5). For the jury to find Mr. Wallace guilty of access device fraud, the government had to prove each of the following elements beyond a reasonable doubt:

First, that the defendant effected transactions with one or more access devices issued to another person or persons;

Second, that the defendant did so to receive payment or any other thing of value aggregating $1,000 or more during any one-year period;

Third, that the conduct affected interstate or foreign commerce; and

Fourth, that the defendant did so knowingly and with intent to defraud.

*Id.* at 227 at 19.

Mr. Wallace seeks a judgment of acquittal and/or a new trial because insufficient evidence of his alleged intent to defraud and the materiality of the central, alleged misrepresentation was presented at trial, and the Court reversibly erred by refusing to instruct the jury on the timing of intent, failure to repay, and efforts to repay. Accordingly, Mr. Wallace moves the Court to either enter a judgment of acquittal or vacate his conviction and grant a new trial.

## I.     LAW

Under Rule 29 of the Federal Rules of Criminal Procedure, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The motion should only be denied if there is "substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982).

Under Rule 33(a) of the Federal Rules of Criminal Procedure, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial[, for any reason,] if the interest of justice so requires." "[T]he district court's authority under Rule 33 'is much broader

than when it is deciding a motion to acquit on the ground of insufficient evidence.'" *United States v. Miller*, 41 F.4th 302, 315 (4th Cir. 2022) (quoting *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985)). When "deciding a motion for a new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government" and "may evaluate the credibility of the witnesses." *Id.* (quoting *Arrington*, 757 F.2d at 1485).

II.    **ANALYSIS**

A. **Insufficient Evidence**

The evidence of Mr. Wallace's (i) intent to defraud and (ii) the materiality of the central, alleged misrepresentation by Mr. Wallace, that money Mr. Wallace charged his clients from their credit cards would be "held in a secure account that would not be touched until the credit card balances were due for payment", ECF No. 157 at 2, was insufficient to sustain a conviction for either wire fraud or access device fraud.

As to the intent to defraud, the government's witnesses (Complainants) testified that Mr. Wallace told them, in what amounted to verbal agreements, that he would "park" money from charges by Mr. Wallace to the Complainants' credit cards in an unidentified account for a certain amount of time, which generally aligned with when the credit card balances were due.[1] At that point, Mr. Wallace would return the money to the Complainants. Even taking the Complainants' testimony in the light most favorable to the government, it amounts to nothing more than evidence of deceit by Mr. Wallace. However, "to convict a person of defrauding another, *more must be shown than simply an intent to lie to the victim or to make a false statement to him*." *See United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012) (citing

---

[1] Mr. Wallace, who testified in his own defense, denied telling the Complainants that he would park the money he charged their credit cards in an account.

*United States v. D'Amato,* 39 F.3d 1249, 1257 (2d Cir.1994) ("[M]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution" (citation modified)). *See also*, *D'Amato,* 39 F.3d at 1261 n.8 ("A breach of contract does not amount to mail fraud. Failure to comply with a contractual obligation is only fraudulent when the promisor never intended to honor the contract. To infer fraudulent intent from mere nonperformance, therefore, would eviscerate the distinction between a breach of contract and fraud."). To be convicted of wire fraud, "a defendant must *specifically intend to lie or cheat or misrepresent with the design of depriving the victim of something of value*". *Id. See also United States v. Raza*, 876 F.3d 604, 623 (4th Cir. 2017) ("We agreed that the government had to prove more than mere deception.").

Here, the evidence presented at Mr. Wallace's trial was insufficient to show that Mr. Wallace lied *to deprive* the Complainants of the money he charged their credit cards. *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001) ("In order to establish the first element, i.e., the scheme to defraud, the Government must prove that the defendants acted with the specific intent to defraud, which may be inferred from the totality of the circumstances and need not be proven by direct evidence." (citation modified)). In fact, the opposite was true. As the Complainants' testified, for most of them, Mr. Wallace returned at least some portion of the funds—and in some cases, significant portions of the funds or more than the money he charged. And this money was returned prior to the investigation and indictment of this case. In multiple instances, Mr. Wallace returned the full amount of some of the charges *within the agreed upon time*, or close in time to the deadline, which was the fulfillment of his promised performance under the terms of his agreements with his clients. Furthermore, at or near the same time that Mr. Wallace did not return the full amounts of money charged to the Complainants, he did return the money he charged other clients, as three of the defense's

4

witnesses testified. And several of the Complainants testified that because Mr. Wallace performed as promised by returning the money to them, they authorized additional charges by Mr. Wallace to their credit cards. Thus, regardless of whether Mr. Wallace lied about holding money he charged his clients in some account, for nearly all of the client-witnesses who testified at trial for both the prosecution and defense, Mr. Wallace either performed as promised (which the government and its witnesses admitted); performed as promised prior to failing to perform as promised under the terms of a different agreement with the same terms; or partially performed by paying some, but not all of the money back. Such facts also make it difficult to conclude there was a scheme at all. Because Mr. Wallace performed as promised to several of the Complainants and, at least, the defense's client-witnesses, any alleged scheme would've been quite disjointed, where some of Mr. Wallace's agreements with clients were part of the scheme, but others were not. No evidence was presented as to why this variance as to performance would occur, sometimes to different transactions with the same client, or to transactions that occurred close in time to one another. More importantly, no evidence was presented that this variance was the product of fraudulent intent. Notably, the indictment in this case *does not* allege that performing as promised, paying off some of the charges in full by the agreed upon deadlines, was part of Mr. Wallace's scheme and artifice. Thus, considering the totality of the circumstances, and taken in the light most favorable to the government, at best the evidence showed only that Mr. Wallace misrepresented what he was doing with the money he charged from the Complainants' credit cards, not that he lied with the design of depriving them of those credit card funds.

This is especially true given that several courts, including the Fourth Circuit Court of Appeals (albeit in an unpublished opinion) have held that when "the alleged material misrepresentation . . . relates to future performance of a contractual obligation, the government must show beyond a reasonable doubt that [the defendant] never intended to

fulfill his promised performance." *United States v. Lenertz*, 63 F. App'x 704, 710 (4th Cir. 2003). *See also United States v. Hagen*, 917 F.3d 668, 674 (8th Cir. 2019) ("The government failed to prove he had no intent or no ability to carry out that offer. Thus, the evidence did not establish either a scheme to defraud or Hagen's specific intent to defraud Robert Kriz when the grazing contract was mailed in April 2013."); *United States v. Paccione*, 949 F.2d 1183, 1196 (2d Cir. 1991) ("Use of the mails in furtherance of a scheme to offer services in exchange for a fee, *with the intent not to perform those services*, is within the reach of § 1341." (emphasis added)); *United States v. Lee*, No. 94–2204, 1995 WL 506990 (6th Cir. Aug. 24, 1995) ("We emphasize, however, that negligence, even 'serious' negligence, and breach of contract cannot form the basis of a mail fraud prosecution. The mail and wire fraud statutes apply only when a promisor enters into an agreement *knowing* that he does not intend to perform under the agreement. Where a promisor enters into a contract or loan agreement intending to perform, the promisor's subsequent nonperformance is the predicate for civil liability, not criminal culpability under the mail and wire fraud statutes. In this case, however, Southen's testimony provided sufficient evidence to support the district court's conclusion that Lee entered into the loan agreements without the intention of providing the security promised to the limited partnerships.")). Here, the alleged material misrepresentation—that Mr. Wallace would "park" the funds he charged from the Complainants' credit cards in some account and return the money at a later, agreed upon date—related to the future performance of a contractual obligation. For the reasons previously stated, the evidence showed that Mr. Wallace intended to—and many times did—fulfill his promised performance, both before and after the indictment period. *See* ECF No. 204, Defendant's Response In Opposition To Government's Motion In Limine – Prior Good Acts (collecting cases regarding the exculpatory nature of other acts inconsistent with fraudulent intent).

The evidence was also insufficient as to the materiality of the alleged misrepresentation by Mr. Wallace that he would park the funds he charged from the Complainants' credit cards in some account and return the money at a later, agreed upon date. "A misrepresentation is material if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.' *United States v. Gillion*, 704 F.3d 284, 296 (4th Cir. 2012) (quoting *Neder v. United States*, 527 U.S. 1, 22 n.5 (1999)). "Resembling a but-for standard, materiality asks whether the misrepresentation constituted an inducement or motive to enter into a transaction." *Kousisis v. United States*, 605 U.S. 114, 131 (2025) (citation modified).

It's true that the Complainants' testified that they would have liked to know what Mr. Wallace was doing with the money he charged their credit cards. But ultimately, at the time the Complainants authorized the credit card charges by Mr. Wallace, they testified that they did so because they "trusted" him, because of the reputation of his business, because of the people who referred them to Mr. Wallace, because of his work in the community, because of the quality and success of the other business services he provided them, and because, for several of them, he paid back some of the charges as promised. They weren't induced or motivated to authorize the charges because Mr. Wallace told them the funds would be held in an account. Without Mr. Wallace's reputation and the quality of the work he provided the Complainants prior to their authorization of the credit card charges, the Complainants would have no reason to believe that Mr. Wallace would hold the funds he charged the Complainants' credit cards in an account. Thus, there was insufficient evidence that this alleged misrepresentation by Mr. Wallace was material because the evidence presented at trial showed that alone, it could not have induced or motivated the Complainants to authorize the credit card charges by Mr. Wallace. *See Kousisis*, 605 U.S. at 131 (stating that materiality for actionable fraud resembles but-for causation).

7

In challenging his conspiracy conviction, Johnson contends that the Government did not prove the specific intent required. Specifically, Johnson avers that the evidence supported the conclusion that he did not intend to deprive the victims of anything of value and instead wanted them to make money and receive their capital. However, to the contrary, the evidence showed that, in order to induce investments, Johnson made a series of promises to investors that their loans would be "risk free," guaranteed, and would earn high rates of interest. However, none of these promises were fulfilled. Johnson was aware that previous promises and representations were not honored, yet he continued to induce new investments with identical promises. Regardless of whether Johnson hoped that the investors he recruited would be made whole, he was still aware that their investments had been disbursed to the Defendants and others and could only be returned with money from new, equally fraudulent investments. This evidence was sufficient to show Johnson's specific intent. *See id.* at 666-67 (holding that evidence that defendants repeatedly appropriated investors' money, even in the face of promises to past investors not fulfilled, was sufficient to show specific intent to defraud). Accordingly, there was sufficient evidence to support Johnson's wire fraud and conspiracy to commit wire fraud convictions.

### B. <u>Jury Instructions</u>

Mr. Wallace requested three specific jury instructions, tailored to the defense he presented to the jury, that the Court declined to give. First, Mr. Wallace requested that the Court instruct the jury as to when the intent for wire fraud had to be formed. Second, Mr. Wallace requested that the Court instruct the jury that "a failure to repay, standing alone, isn't proof of fraud". Third, Mr. Wallace requested that the Court instruct the jury that "efforts to repay may be relevant to intent."

"[A] defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence." *United States v. Hicks*, 748 F.2d 854, 857 (4th Cir. 1984). *See also   United States v. Miller*, 658 F.2d 235, 237 (4th Cir. 1981) ("Instructing a jury that the government must prove that a defendant intended to commit an offense is quite different from explaining to the jury how the defendant can legitimately counter the government's proof of this essential element of the crime. Our precedent on this point establishes that a district court's charge to the jury must be sufficiently precise to instruct the jury in the defendant's theory of defense." (citation modified)). "A district court commits reversible error in refusing to provide a proffered jury instruction only when the instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (citation modified).

From opening statements, the defense clearly communicated to the jury that Mr. Wallace's theory of defense was that, "Failure isn't fraud", and that this case was all about intent. Throughout the trial, and during Mr. Wallace's own testimony, evidence was presented and testimony elicited that Mr. Wallace failed to fulfill his contractual obligation to return the money he charged from the Complainants' credit cards by a certain date. Instead of denying this deprivation of something of value, which is a critical portion of the intent element, the defense theory owned the deprivation but argued that was insufficient to convict Mr. Wallace because it was a failure not a fraud. The evidence that supported this theory was that Mr. Wallace had fulfilled the same contractual obligations to some of the Complainants and, at least, the three client-witnesses that testified during Mr. Wallace's case-in-chief. Further evidence of the defense theory included that part of the way Mr. Wallace built his business and reputation was by performing that contractual obligation as

9

promised for years before he failed with the Complainants and while he was failing with Complainants. Moreover, Mr. Wallace also presented evidence showing that his failure to fulfill his contractual obligation the Complainants was a crisis of capital not a product of fraudulent intent. This evidence provided a more than sufficient foundation for Mr. Wallace's requested jury instructions regard the timing of intent, the failure to repay, and efforts to repay.

The bases for Mr. Wallace's request for the instruction regarding the timing of fraudulent intent was:

(i)     the Fourth Circuit Court of Appeals' holding in *United States v. Lenertz*, 63 F. App'x 704, 710 (4th Cir. 2003) that when "the alleged material misrepresentation . . . relates to future performance of a contractual obligation, the government must show beyond a reasonable doubt that [the defendant] never intended to fulfill his promised performance"; and

(ii)    the United States Supreme Court's recent decision in *Kousisis*. Specifically, that "a fraud occurs only when the *victim 'has been actually misled to his injury.' Smith v. Richards*, 13 Pet. 26, 39, 10 L.Ed. 42 (1839); *see also Clarke v. White*, 12 Pet. 178, 196, 9 L.Ed. 1046 (1838) ("[A] mere fraudulent intent, *unaccompanied by any injurious act*, is not the subject of judicial cognizance" (emphasis added)). But petitioners beg the question by assuming that economic loss alone could satisfy this common-law 'injury' requirement. As the cases and treatises discussed above confirm, it was the *deception-induced deprivation* of property—not economic loss—that common-law courts generally deemed injurious." 605 U.S. at 127 (first and third emphasis added).

Based on this caselaw, Mr. Wallace requested that the Court instruct the jury that the intent to defraud could not be formed after Mr. Wallace charged the Complainants' credit cards.

10

This is so because, under *Kousisis*, a fraud is complete at the time of the deprivation of property under materially false pretenses.  The Fourth Circuit decision in *Wynn* has a similar statement of the intent element: "To be convicted of mail fraud or wire fraud, a defendant must specifically intend to lie or cheat or misrepresent *with the design of depriving the victim of something of value.*" *Wynn*, 684 F.3d 473, 478 (4th Cir. 2012) (emphasis added). Thus, the misrepresentation or omission must be calculated to deprive an individual of something. Therefore, Mr. Wallace could not form the intent to defraud after obtaining the funds from the Complainants because the deprivation was complete and the Complainants could not be misled to a harm that had already occurred. This is why the Supreme Court in *Kousisis* held that proof of loss is not required to be convicted of wire fraud because a fraudulently induced deprivation is all the wire fraud statute requires. *See* 605 U.S. at 127. The Court's failure to give the requested instruction seriously impaired Mr. Wallace's ability to conduct his defense—specifically his taking accountability for the deprivation he caused the Complainants. Without the instruction, the jury could've convicted Mr. Wallace because he failed fulfill his contractual obligation to pay the Complainants back, not that he lied to get the Complainants to authorize the credit card charges.

Mr. Wallace's defense theory was similarly hamstrung by the Court's refusal to instruct the jury that "a failure to repay, standing alone, isn't proof of fraud" and that "efforts to repay may be relevant to intent". Part of Mr. Wallace's theory was that by making payments both in full and close in time to the deadlines showed that he intended to fulfill his contractual obligations to the Complainants, and thus his failure to repay the amounts in full wasn't fraud. The basis for this instruction was the law cited in Mr. Wallace's Response In Opposition To Government's Motion In Limine – Prior Good Acts, ECF No. 177, and his Response In Opposition To Government's Motion To Exclude Expert Testimony, ECF No., regarding the relevancy of loss amount to intent. The Court's failure to give these requested

11

instruction seriously impaired Mr. Wallace's ability to conduct his defense, namely that his failure to repay and efforts to repay were evidence that he lacked the requisite intent to be convicted of either wire fraud or access device fraud.

## III.    CONCLUSION

Accordingly, the Court should either enter a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure or vacate Mr. Wallace's conviction and grant him a new trial under Rule 33 of the Federal Rules of Criminal Procedure.

Respectfully submitted,

BY: *s/Judea S. Davis*
Judea Shechinah Davis (D.S.C. Fed. Bar #13440)
Assistant Federal Public Defender
75 Beattie Place, Suite 950
Greenville, South Carolina 29601
(864) 235-8714
judea_davis@fd.org

Greenville, SC
August 7, 2026